May it please the court, Mark Ian for Appellant Ezzard Ellis. Don Ames was a despicable racist, even towards his client, Mr. Ellis. The state court completely misconstrued the claim here. Ellis pled a conflict of interest claim which requires adverse effect under Kyler v. Sullivan, but the state court applied the more burdensome Strickland prejudice standard. There are two ways to adjudicate the claim on the merits, but if it did adjudicate the claim on the merits, then it was contrary to clearly established federal law. Either way, this court reviews the claim de novo. It's clear that Ellis, while pro se, pled a conflict claim under Sullivan. He alleged that Ames had an actual and potential conflict of interest due to his racial animus, citing and explaining Sullivan. If there was any doubt, the only reference to Strickland specifically distinguishes his conflict claim from the higher Strickland standard. May I ask you one question at the outset? How do you distinguish Mayfield? Well in Mayfield, while the the accompanying decks that originated in Wade v. Calderon were filed there, none of the evidence of the racism was specific to Mayfield. It had been gathered in Wade and there was no evidence directed at Mayfield specifically. In our case, Mr. Ellis had filed a declaration from himself, tying one of the statements in one of the declarations specifically to his case. And because of that, the evidence was, in our case, is specific, is of Don Ames' racism specifically towards our client. What is your best case that supports the proposition that, you know, a racist attitude or racist makeup by defense counsel amounts to, you know, I mean almost to per se an effective assistance? Well, Your Honor, that would be Fraser v. United States. That's a 1994 case out of this out of this court in which an attorney made a racist statement and a threat towards his client. In our case, while a threat is not apparent from the record, there's still the same racial animus. And that case analyzed, or in Fraser, a Kyler v. Sullivan claim was pled. And while the court there found the harm from that so egregious that they found the error to be prejudicial under chronic, similarly here, we've asked the court under both chronic and Kyler v. Sullivan to to find that the conflict of interest was based on the racial animus. So returning to... Fraser, I think, is a good case for you, but Mayfield came well after in an en banc decision. So you're saying that it's different because in this particular case, you have a record of racial animus that you can tie directly to the petitioner, whereas the Mayfield petitioner didn't have that compelling of a record. Yes, Your Honor. But Mayfield essentially applied Sullivan, which required a showing of adverse effect on counsel's performance. Does this record demonstrate that Mr. Ames' racist attitudes adversely affected his performance? And if so, in what way? Well, yes, Your Honor. Mr. Ellis had pled below that there were four ways in which there was adverse effect shown. There was a fair cross-section claim, a Batson claim, a failure to to strike biased jurors and a failure to present evidence that goes to motive. All of those claims are are signs that that Ames essentially pulled his punches and didn't advocate for his client as zealously as possible. The standard here under Kyler v. Sullivan is that there was a likely effect on on counsel's behavior. In the state court, did your client allege that there had been bias demonstrated toward him? On habeas, yes, Your Honor. On habeas in federal or state? In state court, Your Honor. Right, in state court, what what Mr. Ellis alleged was that the evidence that he had gathered, while pro se, showed that that Mr. Ames directed his racial animus towards for his co-defendants counsel towards him and because of that he he essentially pulled his punches in this fifth or in this trial. The in further in further investigation when we were assigned to the case, we went back and interviewed among among several of the witnesses one of Ames's daughters who had given a declaration that was filed in the pro se case and and in that case there is a statement that she made that was much more specific to the case and in that one Ames's daughter recalled Ames talking about a trial from 1990 or 91 involving a robbery with African-American co-defendants at a fast-food restaurant. Considering Ellis's case was originally charged as a capital case, went to trial five times and was tried in 1990 and 91, it's very likely that that was that this is the case that was referred to and as we made the arguments in our briefs there are a number of ways that 2254 D doesn't apply and this court can review de novo the evidence that was presented in the federal court for the first time. As I was saying in the beginning, one argument is that it was not fairly adjudicated on the record or on the merits and that's because they simply the state court simply misconstrued the claim and and addressed a Strickland claim that was not pled. Another way if if the court finds it was adjudicated on the merits then then the decision was contrary to Sullivan because because they simply applied the wrong standard. Either way 2254 D does not apply and this court can review de  So let's discuss why Mickens v. Taylor does not bar relief here. Firstly, the part of Mickens saying that Sullivan only applies to joint representation is dicta. As Justice Sotomayor explained in Tueros v. Greiner, the Mickens case itself applied Sullivan to a successive representation case and not a joint representation case. And secondly this court has applied Sullivan to non-joint representation cases in at least two instances in Lewis v. Maley and Alberni v. McDaniel. The Alberni dissent specifically advocated this more restrictive view of Mickens and that was not the position adopted. And as I was alluding to earlier, this court could also follow Frazier v. United States and Cronic and find that the conflict here amounted to abandonment of counsel, in which case Mickens would not have any bearing. It's important to note that we're not asking to expand Sullivan to all manner of conflicts here. Racism, particularly against African Americans, is special in federal law. Recently in Pena-Rodriguez v. Colorado, the Supreme Court held that all forms of improper bias pose challenges to the trial process, but there is a sound basis to treat racial bias with added precaution. And that is what we're asking here, not that Sullivan be applied to all manner of conflicts, but that a narrow exception be carved out for the especially pernicious harm of racism towards an African-American client here. And if you don't have any questions, I'll reserve my remaining time. Well, I have one more question. This is a original condition within the state court, right? San Bernardino County Superior Court. Yes, Your Honor. So we're bound by AEDPA, right? Yes, Your Honor. So, I mean, your argument that we should carve out an exception under Sullivan means there's no clearly established law, doesn't it? Well, Your Honor, as I was explaining, under Sullivan, this is clearly a conflict of interest. And the language in Mickens v. Taylor suggesting that Sullivan cannot be extended to a case such as this, which is not a joint representation case, is either dicta or we're outside of the joint realm if you apply chronic to it. Your argument that racism is a special category in law these days, I think, is an accurate argument. But that doesn't get by Judge Tajima's question. Is that established for conflict of interest by the court that racism is treated differently? Well, Your Honor, I would argue that Frasier v. United States is that case. Although it is pre-AEDPA, it is a case in which that court essentially, well, applied conflict law to a case of bank case. Yes, Your Honor. Yes, Your Honor. But the restriction in regards to AEDPA in terms of deferring to the state court is mostly an operation under 2254 D. As I explained, there are reasons to put aside 2254 D in this case. And even under 2254 E, in terms of deferring to the state court's factual finding, the factual finding in question has to do with whether Ames' representation in this case was vigorous. For one, that was on direct appeal when these habeas claims were not at issue. And two, well, it was on direct appeal and, well, I think for that reason, then that finding of vigorousness. Oh, and because the conflict here, the important inquiry is not outcome determinative as it is in Strickland. In Strickland, we would be looking at whether there's other evidence that would still support the conviction. But the inquiry here is whether Ames likely pulled his punches or likely affected his advocacy. Whether he performed other functions in giving a closing argument or cross-examining certain witnesses, that does not undercut whether or not his racial animus directed towards this client undercut his performance. Thank you. We'll give you two minutes for rebuttal. Thank you, Your Honor. Good morning. May it please the Court, Deputy Attorney General Christine Friedman for the Warden. Of course racism should be condemned, as should the derogatory remarks Mr. Ames made about African-Americans and other people of color. It's beyond cavil that those remarks were utterly deplorable. But that's not the issue on appeal. To what extent was it raised in the state court that there was not only general bias by this counsel, but bias directed against the defendant in this case? And what did the state court rule on that? To what extent did the state court give a view on what had occurred? The first time it was raised was in the state habeas in 2003, and that's the decision and the reason decision that is the focus of EDPA here in this case. And the state court, even though it wasn't the model of clarity, it appears that the court applied both the conflict of interest analysis as well as Strickland. The state court decision stated the fact that the federal appeals court, i.e. the Ninth Circuit in Mayfield, found Mr. Ames racially biased in that case before the court did not demonstrate that the acts of which petitioner complains were racially motivated. So it appears that the state court was saying that even if racial bias can constitute a conflict of interest, appellant can't show that the racial bias adversely affected Mr. Ames's performance. And then the state court went on to say that appellant could not satisfy Strickland. So appellant tries to argue that the state court did not adjudicate his racial bias conflict claim because the state court applied Strickland prejudice as opposed to a conflict of interest analysis. However, it does appear that the court did both. And at any rate, even if this court finds that the state court did not apply a conflict of interest analysis, it can reasonably be concluded that the state court determined correctly that Sullivan just doesn't apply to racial bias conflict claims. The same court make any statements as to whether the racial bias in this case was directed to the individual defendant as opposed to his general client? No. The statement that I read was pretty much the extent of it. The decision was pretty brief. But it is clear that the state court did adjudicate the racial bias conflict claim. That was actually the only claim that was presented in the state court petition. In the federal petition, appellant argued in the alternative that there was Strickland prejudice. In the state court petition, no Strickland prejudice argument was made. So the racial bias conflict claim was the one and only claim raised in the state court petition. If a federal claim is fairly presented to a state court and the state court denies relief, it is presumed that the state court adjudicated the federal claim, absent indications to the contrary. Here, there are positive indications that the state court adjudicated the racial bias conflict claim. Therefore, AEDPA does apply. And even if the court found that the state court, the racial bias conflict claim was not adjudicated by the state court, Teague would still apply. And also, appellant's racial bias conflict claim would fail under a de novo review. When you say the claim, was it a claim that there was racial bias expressed directly toward the defendant as opposed to just general racial bias? Are you asking what the claim was in the state court petition? Yes. State court petition alleged that he received ineffective assistance of counsel because Mr. Ames was racially biased towards, I guess, him and Mr. Porter, the African-American counsel for a co-defendant. Thank you. Appellant relies heavily on Frazier. However, Frazier is completely distinguishable. In Frazier, the attorney actually communicated his racism to the client. He said something to the effect of, you and SOB, if you proceed to trial, you'll find that I'll be very ineffective. The results of that case actually would have been the same, even if the attorney didn't use the racial slur and just said, you're a stupid idiot. If you go to a trial, you'll find that I'll be very ineffective. So there, the threat, the overt threat to the client was a large part of that court's decision. In effect, the threat severed the lines of communication between the attorney and client and made it so that there was constructively no effective assistance of counsel. Can I have you go back to the state court decision? Yes. Is it, it's very short and it isn't clear, but is it your reading that the state court applied the Strickland standard to his racial bias claim? It's my reading that the court kind of did both. The court made a quick comment about no showing of a nexus between racial bias and the performance of Mr. Ames. But then the court went on to say at any rate, appellant can't satisfy the Strickland prejudice standard. So upon my reading, the court sort of did both, saying even if the Sullivan standard applies, appellant can't show that the racial bias adversely affected performance. And Strickland is the proper standard and he can't satisfy that either. Did the court correctly state the Strickland standard? For the most part, yes. Well, if it misstated it, then aren't we in de novo land? It did adequately state it. I think it might have stated something about a preponderance of evidence. So that it said he has not shown by competent evidence that absent any or all of the acts, the outcome of the trial would have been more favorable to him. The proof of this prejudice must be by preponderance of the evidence. That's not the Strickland prejudice standard, is it? It seems higher than the Strickland prejudice standard. Yeah, it was worded improperly. However, even if this court were to apply a de novo review, appellant's claim would still fail. I can address that for a little bit. If the court actually reads it. So if we've applied de novo review, then I think the problem for us may be Mayfield. And counsel's distinguishing Mayfield by the fact that in this particular case, the record more compellingly demonstrates racial bias specifically targeted towards the petitioner, whereas the Mayfield petitioner didn't have that sort of a record. How do you respond to that? What's significant about Mayfield is that Mayfield refused or declined to grant a certificate of appeal ability on Mayfield's racial bias conflict claim because the Ninth Circuit recognized the limitations of the Sullivan exception. In Mayfield, the Ninth Circuit stated that, let's see. In Ninth Circuit, the Ninth Circuit stated that it wasn't even clear that Mayfield's racial bias conflict claim was cognizable under a Supreme Court precedent. So this was even before Mickens. So Mayfield got a racist lawyer representing you. At what point does prejudice get presumed, if at all? I think that kind of goes to the heart of why racism should not be treated as a conflict of interest. There are a number of reasons why it doesn't really fit within the conflict of interest framework. But first of all, there's the issue of the main premise. It's never presumed? It's never presumed, then? It should not be presumed if it's just racial bias in itself that is not communicated to the client. The problem is that racial bias comes in varying degrees. So on one end of the spectrum, you can have someone who's just a little bit racist who holds racial stereotypes about certain racial groups. On the other end of the spectrum, you have someone who wears a white hood as a regular activity. And then there is various degrees of racism in between. So the question does become, at what point do you have enough racism that you have an actual conflict of interest? What is that threshold of racism? And that would be a very difficult question to answer. And even if you could reach that determination of how much racism is enough, there would be problems of proof. People don't often speak what's in their hearts and minds. But that's precisely the argument for presumption of prejudice under certain circumstances, because people don't express, particularly to their clients, their racial animus. Yes and no. And again, the problem is determining when prejudice would be a conflict of interest, how much of it is enough. And then there's the underlying premise that racism in itself constitutes a breach of the duty of loyalty. I think that is the main premise underlying appellant's racial bias conflict claim. Of course, it's preferable that an attorney not be racist. Yes, that would be preferable. Yes, of course. But just because an attorney has some racist beliefs does not necessarily mean that that attorney cannot set aside those personal beliefs to perform his duty as an attorney to his client. Lawyers are human beings, and there will be many cases where attorneys dislike or even despise their clients. For example, a criminal defense attorney might really hate pedophiles, or an ACLU attorney may find his white supremacist client personally abhorrent. But attorneys are expected to set aside their prejudices to honor the oath they took to uphold the Constitution and provide effective assistance to their clients. Your time is up. Do you need another sentence? No, thank you. Thank you. A few quick points, Your Honor. One is that what way did your counsel convey to your client his racist attitudes? It's not apparent that he conveyed his racist attitudes to the client at the time of trial. The reason for the untimely filing of the petition was that he didn't find out about it until someone sent him a news article about Ames' racism in other cases. So at least from the record below, it's not apparent. Okay. How do you distinguish Mayfield? Well, in Mayfield, again, the declarations that were filed were not specific to Mayfield specifically. And in this case, there is at least one statement in the declarations tying it specifically to Ellis' case. Which one is that? That's the statement about the co-defendant's attorney. So this is April Johnson, one of Ames' secretaries, who gave a statement saying that, I heard Mr. Ames refer to his African-American co-counsel as a racial epithet trying to be a white man. But that was directed toward the counsel. That's right, Your Honor. Not toward the client. Yes, Your Honor. And Mr. Ellis filed a declaration saying that he believed that that was in reference to his case and that he believed that Mr. Ames took out his animus towards the co-defendant's counsel against him. Another statement that was filed from a different secretary of Ames' also could potentially tie to Ellis. And that's, while working in Mr. Ames' office, I heard him speaking about a client with his associates. He said that because his client was black, he, Ames, did not trust him and did not care what happened to him. Now, admittedly, those are slightly veiled references before the state court. But once we get past 2254D and this court can review the or can consider the declarations that were filed in federal court, one of them was from his daughter, Allison Taylor, and she says specifically, I recall a specific conversation with my father in 1991 or 1990, in which he refers to African-American men were accused of holding up or robbing somebody at a fast food restaurant. Our case occurred in the drive-through of a McDonald's. My father referred to his client in the case with racial slurs. My father also commented on how stupid his client was for committing the crime in the manner he did and said that such stupidity was typical of African-Americans. So the record in our case is more specifically tied to Ellis specifically, not just generalized racism. That goes to what I was asking for, that we're asking for a specific exception or a very contained exception here when there is evidence that a racist attorney had racial feelings toward a client in particular and not just generalized racism, which is not our case. And I would also correct something that the counsel said about Fraser v. United States. She was trying to downplay the racist angle there. And certainly the threat that was made in Fraser is galling, but it should be noted that that court there made racism integral to its decision. A quote from it says, but a verbal assault manifesting explicit racial prejudice and threatening to compromise the client's rights far exceeds and transcends the facts and holding in that case. We were advancing that it was critical to the Fraser case that it was not just a threat, but a racist threat. And this kind of pernicious racism is what Cronick and Sullivan were meant to correct. And for that reason, we asked the court to grant relief in this case.  Thank you, Your Honor. Thank you, Your Honor. The next case is California Trucking v. George Susan.
judges: Reinhardt, Tashima, Nguyen